**David BEHAR, M.D., Plaintiff**

v.

**PENNSYLVANIA DEPARTMENT OF TRANSPORTATION and Allen Biehler, Defendants.**

**Civil Action No. 1:09–CV–2453.**

United States District Court, M.D. Pennsylvania.

March 31, 2011.

Alan S. Gold, Gold & Robins, P.C., Jenkintown, PA, Brian P. Moquin, Law Offices of Brian P. Moquin, San Jose, CA, for Plaintiff.

Sean A. Kirkpatrick, Office of Attorney General of the Commonwealth of PA, Robert B. Hoffman, Eckert Seamans Cherin & Mellott, LLC, Harrisburg, PA, for Defendants.

### *MEMORANDUM*

CHRISTOPHER C. CONNER, District Judge.

Presently before the court is the report (Doc. 37) of the Honorable William T. Prince, United States Magistrate Judge, recommending that the motion for judgment on the pleadings (Doc. 18) filed by defendants, the Pennsylvania Department of Transportation ("PennDOT") and Allen

Biehler, Secretary of Transportation for the Commonwealth of Pennsylvania, be granted in part, and denied in part. Plaintiff David Behar, M.D. ("Dr. Behar") has filed objections (Docs. 43–44) to the magistrate judge's report and recommendation ("R & R"). The Pennsylvania Medical Society, the American Medical Association, and the Pennsylvania Psychiatric Society filed a brief of *amici curiae* (Doc. 42) in support of Dr. Behar's objections. For the reasons set forth below, the court will adopt the R & R in its entirety.

## I. *Background*

Dr. Behar, a licensed psychologist and health care provider in the Commonwealth of Pennsylvania, filed the instant action challenging a PennDOT regulation that requires health care professionals to report to the Department of Transportation every patient over the age of fifteen who is affected by any of a number of listed medical conditions which could impact their ability to safely operate a motor vehicle. *See* 75 PA. CONS.STAT. §§ 1517, 1518, 6103; 67 PA. CODE § 83.1. The regulation provides, in relevant part:

> Disqualification on provider's recommendation. A person who has any of the following conditions will not be qualified to drive if, in the opinion of the provider, the condition is likely to impair the ability to control and safely operate a motor vehicle:
>
> . . .
>
> (7) Use of any drug or substance, including alcohol, known to impair skill or functions, regardless whether the drug or substance is medically prescribed.
>
> (8) Other conditions which, in the opinion of a provider, is [sic] likely to impair the ability to control and safely operate a motor vehicle.

67 PA.CODE § 83.5(b).

> Physicians and other persons authorized to diagnose and treat disorders and disabilities defined by the Medical Advisory Board shall report to the Department, in writing, the full name, date of birth and address of every person 16 years of age and older diagnosed as having any specified disorder or disability within 10 days, under 75 Pa.C.S. § 1518 (relating to reports on mental or physical disabilities or disorders).

67 PA.CODE § 83.6. A provider who fails to report such individuals is subject to a summary offense and fine of $25.00. 75 PA. CONS.STAT. § 6502. Dr. Behar contends that this regulation violates numerous provisions of the federal constitution, the Pennsylvania state constitution and federal law including: the Supremacy Clause, the Due Process Clauses under the Fifth and Fourteenth Amendments, the First and Fourteenth Amendment right to association, privacy rights under the Ninth and Fourteenth Amendment, Article I, § 1 of the Pennsylvania Constitution, the Americans with Disabilities Act, 42 U.S.C. § 12135, *et seq.*, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) *et seq.* (Doc. 1).

Defendants filed a motion for judgment on the pleadings (Doc. 18) on February 16, 2010. By order dated August 3, 2010 (Doc. 35) this court referred the motion to Magistrate Judge Prince to prepare a Report and Recommendation. On October 6, 2010, 2010 WL 6428640, Magistrate Judge Prince filed his report recommending that this court grant judgment in favor of defendants on all counts except for the Supremacy Clause challenge in Count I of the complaint to the extent the PennDOT regulation seeks disclosure of the medical record of any individual participating in a

federally assisted alcohol or drug treatment program pursuant to the Drug Abuse Prevention, Treatment and Rehabilitation Act, 42 C.F.R. §§ 2.1 *et seq.* (Doc. 37, at 13–16, 44). Dr. Behar filed numerous objections to the R & R on November 8, 2010. (Doc. 43). The Pennsylvania Medical Society, the American Medical Association, and the Pennsylvania Psychiatric Society filed a brief of *amici curiae* (Doc. 42) in support of Dr. Behar's objections with respect to the privacy claim on November 8, 2010.[1] Defendants filed their brief in opposition (Doc. 48) to the objections on November 26, 2010. The matter is now ripe for disposition.

## II. Standard of Review

### A. Standard of Review for a Motion for Judgment on the Pleadings

A motion for judgment on the pleadings is the procedural hybrid of a motion to dismiss and a motion for summary judgment. Rule 12(c) of the Federal Rules of Civil Procedure provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." FED.R.CIV.P. 12(c). To succeed on a motion under Rule 12(c), the movant must clearly establish that no material issue of fact remains to be resolved and that "he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir.2005); *see also* 5C CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1368 (3d ed.). When deciding a motion for judgment on the pleadings, the court is directed to view "the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sikirica*, 416 F.3d at 220.

### B. Standard of Review for a Magistrate Judge's Recommendation

Where objections to a magistrate judge's report and recommendation are filed, the court must perform a *de novo* review of the contested portions of the report. *Supinski v. United Parcel Serv.*, Civ. A. No. 06–0793, 2009 WL 113796, at *3 (M.D.Pa. Jan. 16, 2009) (citing *Sample v. Diecks*, 885 F.2d 1099, 1106 n. 3 (3d Cir.1989); 28 U.S.C. § 636(b)(1)(c)). "In this regard, Local Rule of Court 72.3 requires 'written objections which ... specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for those objections.'" *Id.* (citing *Shields v. Astrue*, Civ. A. No. 07–417, 2008 WL 4186951, at *6 (M.D.Pa. Sept. 8, 2008)).

## III. Discussion

Dr. Behar claims, in essence, that Judge Prince erred in each and every one of his conclusions. The court respectfully disagrees with each and every objection.

### A. Dr. Behar's Standing

■ Dr. Behar argues that Magistrate Judge Prince erred in concluding that he lacks individual standing to challenge the PennDOT regulation. (Doc. 43, at 2–3; Doc. 44, at 12–14). Judge Prince concluded that Dr. Behar satisfies third-party standing requirements to challenge the regulation on behalf of his patients. (Doc.

---

1. Defendants assert that the amici brief is procedurally deficient because no federal or local rule allows for the filing of a brief by a non-party. (Doc. 48, at 29). Although, there is no statute, rule or controlling case law regarding a district court's power to accept the filing of amicus briefs, courts in this circuit have determined that it is a matter within the district court's discretion. *See Sciotto v. Marple Newtown Sch. Dist.*, 70 F.Supp.2d 553, 554 (E.D.Pa.1999); *Waste Mgt. of Pa., Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D.Pa.1995). The undersigned has determined that the amici brief may be of assistance to this court and has permitted its filing. (Doc. 50).

37, at 7–8). However, he found that Dr. Behar lacks individual standing to bring a pre-enforcement review of the regulation because Dr. Behar does not claim that he has been threatened with prosecution or that prosecution is even a remote possibility. (*Id.* at 8 (citing *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971))).

■ To establish the constitutional minimum requirements of standing a party must show: (1) an injury in fact that is concrete and particularized and actual or imminent, not hypothetical or conjectural; (2) a causal connection between the injury and the challenged action; and (3) a likelihood that a favorable decision of the court will redress the injury. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Judge Prince correctly concluded that Dr. Behar lacks individual standing, as he has shown no injury in fact. Dr. Behar, practicing under the challenged regulation for thirty years, does *not* claim that he has been threatened with prosecution. In fact, *the regulation has never been enforced* against health care providers who fail to disclose the information required under the regulation.

■ It is well-settled that part and parcel of pre-enforcement challenge to a criminal statute is a *credible* threat of prosecution. *See Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). " '[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.' " *Id.* (quoting *Younger,* 401 U.S. at 42, 91 S.Ct. 746). Dr. Behar directs the court's attention to a PennDOT physician reporting fact sheet that states "providers who do not comply with their legal requirement to report may be convicted of a summary criminal offense." (*See* Doc. 26, at 25 n. 1 (citing Pa.

Dep't of Transp., *Physician Reporting Fact Sheet,* http://www.dmv.state.pa.us/pdotforms/fact_sheets/fs-pub7212.pdf)). Standing alone, the fact sheet fails to create a credible threat of prosecution, particularly in the absence of any history of prosecution. Hence, the court adopts Judge Prince's conclusion that Dr. Behar lacks individual standing.

**B. *The Appropriate Standard for a Facial Challenge***

■ Dr. Behar's asserts that Judge Prince failed to apply the correct standard in analyzing his facial Supremacy Clause challenge to PennDOT's regulation. (Doc. 43, at 3–5; Doc. 44, at 14–16). Judge Prince utilized the standard in *United States v. Salerno,* 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). (Doc. 37, at 12). Pursuant to *Salerno,* a statute is facially unconstitutional only if "no set of circumstances exists under which the [statute] would be valid." *Salerno,* 481 U.S. at 745, 107 S.Ct. 2095. Dr. Behar claims that the Supreme Court has since adopted a different standard, finding that a facial challenge fails when a statute has "a plainly legitimate sweep." *Crawford v. Marion Cnty. Election Bd.,* 553 U.S. 181, 202–03, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008) (plurality) (quoting *Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008)) (internal citations and quotations omitted). He asserts that recent Third Circuit precedent has ignored the new standard or has misconstrued *Washington State Grange.* (Doc. 44, at 15–16).

■ This argument is unavailing. The *Salerno* standard is the appropriate standard for facial challenges and, applying it to the instant matter, the regulation survives facial challenge. Reliance on the "plainly legitimate sweep" standard set forth in *Crawford* is problematic in that it

is a plurality opinion joined by only three members of the Court. Moreover, *Washington State Grange* provides scant support for Dr. Behar's position. *Washington State Grange* merely mentions that some members of the Court criticize the *Salerno* standard and recognize a second type of facial challenge *in the First Amendment context. Id.* Third Circuit precedent has limited the use of the "plainly legitimate sweep" standard to First Amendment cases. *See United States v. Marcavage,* 609 F.3d 264, 273 (3d Cir.2010) (noting that there are two ways to succeed in a facial challenge in the *First Amendment* context: the plaintiff "may demonstrate either that no set of circumstances exists under which the [law] would be valid, i.e., the law is unconstitutional in all its applications, or that the law is overbroad because a substantial number of its applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep" (citations and quotations omitted)); *Brown v. City of Pittsburgh* 586 F.3d 263, 269 (3d Cir.2009) (noting in the context of a First Amendment challenge to a "buffer" and "bubble" zone around hospitals and clinics that the Supreme Court has suggested a slightly lower burden than the "no set of circumstances" standard set forth in Salerno). As this is not a First Amendment challenge, the "plainly legitimate sweep" standard is simply inapplicable.[2] Judge Prince correctly applied the Salerno standard to Dr. Behar's facial Supremacy Clause challenge and properly concluded that Dr. Behar has not satisfied his burden.

## C. *Vagueness of Regulations*

■ Dr. Behar next contends that Judge Prince erred in concluding that the PennDOT regulation is not unconstitutionally vague. Dr. Behar reasserts the arguments he set forth in his brief in opposition to the motion for judgment on the pleadings. He contends that reporting individuals with "[o]ther conditions which, in the opinion of a provider, [are] likely to impair the ability to control and safely operate a motor vehicle," 67 Pa. Code § 83.5(b), requires him to assess driving skills. Behar notes that the Motor Vehicle Code does not define what abilities are necessary "to control and safely operate a motor vehicle," and that it fails to specify what "other conditions" must be reported. He further asserts that the Medical Advisory Board impermissibly delegated to health care providers its authority to define conditions that affect the ability to drive safely.

■ A statute is considered unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning." *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (quoting *Connally v. Gen. Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926)). Judge Prince found the standard to be clear: the provider's professional opinion governs with respect to

**2.** Assuming *arguendo* that the "plainly legitimate sweep" standard is applicable, the court nevertheless finds that the PennDOT regulation withstands constitutional scrutiny. Behar challenges the regulation on grounds that it is preempted by the Drug Abuse Prevention, Treatment and Rehabilitation Act, 42 C.F.R. § 2.1 *et seq.,* subsequently incorporated under the Public Health Services Act ("PHSA"), 42 U.S.C. § 290dd–2. The PHSA restricts disclosure of medical information for those individuals participating in federally-assisted substance abuse treatment. The reg-

ulatory requirement to report drug use is but one of numerous reporting requirements, the vast majority of which have nothing to do with substance abuse. *See* 67 Pa. Code §§ 83.3, 83.4, 83.5. It cannot be said that a substantial number of the regulation applications are unconstitutional in relation to the regulation's plainly legitimate sweep. Thus, the regulation survives facial challenge. *See McCullen v. Coakley,* 571 F.3d 167, 174 (1st Cir.2009) ("Howsoever worded, this standard imposes a very heavy burden on a party who mounts a facial challenge to a state statute.").

"other conditions" and a provider need not become an assessor of driving skills to make that determination. (Doc. 37, at 18). Judge Prince concluded that the catch-all "other conditions" phrase is "general enough to encompass impairments which may not be listed but which nonetheless would have an effect on the ability to drive safely while also being sufficiently specific as to what is required of health care providers." (*Id.* at 19).

The court agrees with Judge Prince's sound analysis. It is beyond cavil that no one is better qualified than a healthcare professional to make an assessment of reportable impairments. And such an assessment does not require an expertise in driving skills. The healthcare provider need only form a professional opinion that the impairment is "likely" to jeopardize the safe operation of a motor vehicle. That this regulatory language requires a professional opinion and, therefore, incorporates an element of subjectivity, does not mean it is impermissibly vague. It simply means that the statutory standard is tied to the exercise of professional judgment, a perfectly acceptable, direct, and clear requirement. See *Doe v. Bolton,* 410 U.S. 179, 192, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973) (rejecting vagueness challenge to Georgia abortion statute that required physician's decision to rest upon "his best clinical judgment that an abortion is necessary," wherein appellants argued that the statute lacked objective standards and that the language failed to apprise doctors of what conduct was proscribed, and concluding that language permitted physicians to consider all relevant factors in order to make the best medical judgment); *United States v. Collier,* 478 F.2d 268, 271–72 (5th Cir.1973) (holding that language in the Controlled Substance Act making it illegal for a physician to dispense a schedule II controlled substance to the ultimate user except "in the course of his professional practice" was not unconstitutionally vague

and stating that "statutes affecting medical practice need not delineate the precise circumstances constituting the bounds of permissible practice"); *United States v. Quinones,* 536 F.Supp.2d 267, 273–74 (E.D.N.Y.2008) (concluding that the "usual scope of professional practice" in the Controlled Substance Act is not unconstitutionally vague and stating that "a statute or regulation is not required to specify every prohibited act" (internal citations omitted)).

## D. *Article I, Section 1 of the Pennsylvania Constitution*

Dr. Behar's fourth objection asserts that Judge Prince failed to address his right to privacy cause of action pursuant to Article I, § 1 of the Pennsylvania Constitution. He claims that defendants did not challenge the claim and Judge Prince did not address the claim. (Doc. 44, at 22). Defendants counter that their motion for judgment on the pleadings sought judgment on all counts and their brief in support recognizes and discusses the claim. (Doc. 48, at 28).

■ Article I, § 1 of the Pennsylvania Constitution states: "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness." Pa. Const. art. 1, § 1. The Pennsylvania Supreme Court has interpreted the section as including a right to privacy that protects against the disclosure of personal matters in which an individual has a legitimate expectation of privacy. *See Denoncourt v. Commonwealth State Ethics Comm.,* 504 Pa. 191, 470 A.2d 945, 947–48 (1983). However, the right is not unqualified; it must be balanced against state

interests. *In re T.R.*, 557 Pa. 99, 731 A.2d 1276, 1280 (1999).

Courts in this circuit have generally considered federal constitutional privacy claims *in pari materia* with state constitutional privacy claims. See *Dziewa v. Pa. Interscholastic Athletic Ass'n, Inc.*, Civ. A. No. 08–5792, 2009 WL 113419, at *4 (E.D.Pa. Jan. 16, 2009); *Denoncourt*, 470 A.2d at 948 (adopting same two-pronged analysis for privacy claims arising under the Pennsylvania state constitution as applied to privacy claims arising under the federal constitution). Although Judge Prince did not discuss Article I, § 1 separately from the Fourteenth Amendment privacy claim, his analysis of Dr. Behar's privacy claim relied on *McKay v. Commonwealth*, 52 Pa.Cmwlth. 24, 415 A.2d 910 (Pa.Commw.Ct.1980). In *McKay*, the Pennsylvania Commonwealth Court concluded that a patient's constitutional right to privacy was not violated by her psychiatrist's disclosure of her drug dependence to PennDOT in accordance with the reporting requirement.[3] *Id.* at 915. The *McKay* court held that "allowing disclosure of information obtained by a psychiatrist from a motor vehicle operator at a hearing conducted for the sole purpose of determining that operator's competency to operate a motor vehicle constitutes an intrusion on the operator's right to privacy, but that intrusion … is outweighed by the public's interest in having incompetent drivers removed from the highways." *Id.* Thus, Judge Prince did not fail to address Dr. Behar's privacy claim under Article I, § 1 of the Pennsylvania Constitution. Rather, his analysis is subsumed in the review of Dr. Behar's privacy claim under the United States Constitution. As dis-

cussed further at *infra* Part III.G, the court finds no error in Judge Prince's analysis.

### E. *Due Process Claims*

 In his fifth objection, Dr. Behar contends that Judge Prince erroneously concluded that he failed to state a cause of action for violation of his substantive due process rights. Judge Prince concluded that the right to practice one's profession is not a fundamental right, thus, the Penn-DOT regulation need only be rationally related to a legitimate government interest. (Doc. 37, at 30–31). The purpose of the PennDOT regulation—to promote the safe operation of vehicles by competent drivers on Pennsylvania's roadways—is rationally related to a legitimate state interest and, therefore, dismissal of the due process claim is warranted.

Dr. Behar asserts that pursuant to *Sharon v. Larson*, 650 F.Supp. 1396 (E.D.Pa.1986), PennDOT must establish a reasonable factual basis that is "rationally related to the State's interest in promoting highway safety." (See Doc. 44, at 23 (citing *Sharon*, 650 F.Supp. at 1404)). He asserts that there is no statistical benefit to mandatory reporting laws for numerous conditions that must be reported under the PennDOT regulation. He claims that mandatory reporting in these circumstances does not augment highway safety. To the contrary, he asserts that the reporting requirements interfere with a doctor's ability to treat his patients by creating a disincentive to patient candor. According to Dr. Behar, this chilling effect on, for example, a patient's description of symptoms, defeats the very pur-

---

**3.** The *McKay* court did not specify whether its analysis concerned a constitutional right to privacy under the Pennsylvania Constitution or the United States Constitution. However, the *McKay* court referenced *In re B*, 482 Pa. 471, 394 A.2d 419 (1978), in its analysis. In *In re B*, the state supreme court invoked both federal and state constitutional provisions in its discussion of the constitutional right to privacy. *Id.* at 425.

pose of the reporting requirements, and the regulation is not rationally related to the Commonwealth's interest. (Doc. 44, at 23–24). Dr. Behar also asserts that the psychiatrist-patient privilege is as strong as the attorney-client privilege in Pennsylvania (*see* Doc. 44, at 24–26), and PennDOT regulations require him to "breach this absolute duty of confidentiality." (*Id.* at 26). Dr. Behar thus infers that as a consequence of the strength of the psychiatrist-patient privilege he is exempted from the reporting requirement.

█ The rational review standard is very deferential to the state: "a statute withstands substantive due process challenge if the state identifies a legitimate state interest that the legislature could rationally conclude was served by the statute." *Alexander v. Whitman,* 114 F.3d 1392, 1403 (3d Cir.1997) (quoting *Sammon v. New Jersey Bd. of Med. Examiners,* 66 F.3d 639, 645 (3d Cir.1995)); see also *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (rational basis review starts from the presumption that the statute is valid). The Commonwealth's interest in promoting the safe operation of vehicles on its roadways is undoubtedly a legitimate one, *see Sharon,* 650 F.Supp. at 1397; *Wroblewski v. Commonwealth,* 570 Pa. 249, 809 A.2d 247, 250 (2002) (highway safety a compelling state interest), and the Pennsylvania General Assembly *could reasonably conclude* that the physician reporting requirement is rationally related to that interest. In *Estate of Witthoeft v. Kiskaddon,* the Pennsylvania Supreme

Court stated that the physician reporting requirement benefitted "the Commonwealth by relieving it of an administrative burden." 557 Pa. 340, 733 A.2d 623, 627 (1999). Rather than require drivers to submit to periodic physical examinations by PennDOT—which would be an intrusive requirement—the Commonwealth requires physicians to report certain disabilities and disorders in order to determine the propriety of licenses for patients with certain medical conditions. *Id.* The Commonwealth's reporting requirement is, therefore, rationally related to the state's legitimate interest in roadway safety.

█ Dr. Behar's assertions with respect to the statutory psychiatrist-patient privilege are, likewise, unavailing. The psychiatrist-patient privilege [4] is a testimonial privilege that does not protect opinions, observations or diagnoses; it protects only communications between psychiatrist and patient. See *Commonwealth v. Moody,* 843 A.2d 402, 406 (Pa.Super.Ct.2004) (citing *Commonwealth v. G.P.,* 765 A.2d 363 (Pa.Super.Ct.2000)); *Commonwealth v. Simmons,* 719 A.2d 336, 341 (Pa.Super.Ct.1998) (stating that "it is clear that the privilege is designed to protect confidential communications made and information given by the client to the psychotherapist in the course of treatment .... [h]owever, the privilege is not designed to specifically protect the psychotherapist's own opinion, observations, diagnosis or treatment alternatives"); *see also Rost v. State Bd. of Psychology,* 659 A.2d 626, 629 (Pa.Commw.Ct.1995) (concluding

---

**4.** In the Commonwealth of Pennsylvania, the psychiatrist-patient privilege statute provides as follows:

> No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52), to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.

42 Pa. Cons.Stat. § 5944.

that plaintiff erred in attempting "to equate the psychologist-client privilege with the rule of confidentiality found in the Code of Ethics for psychologists. Although the two are similar, the privilege is limited in scope to the question of admissibility of evidence in a civil or criminal trial.").

 The psychiatrist-patient statutory privilege does not, as Dr. Behar contends, create an "absolute duty of confidentiality" violated by the reporting requirement. The reporting requirement, in fact, honors the psychiatrist-patient privilege by proscribing the introduction of these reports in any criminal or civil trial, *except* in proceedings to determine the competency of an individual to operate a motor vehicle. *See* 75 PA. CONS.STAT. § 1518(e); *see also* 75 PA. CONS.STAT. § 1519; 75 PA. CONS.STAT. § 1550.

The record and the applicable legislative history are devoid of any indication that the Pennsylvania General Assembly intended to create an exemption from the reporting requirement for information obtained through the psychiatrist-patient relationship. *See McKay,* 415 A.2d at 913–14 (rejecting appellant—a psychiatric patient's—assertion that doctor testimony should be excluded on basis of statutory physician-patient privilege because enactment became effective subsequent to passage of Vehicle Code). The psychiatrist-patient statutory privilege, as it currently exists, was passed by the Pennsylvania

legislature on July 9, 1976. See Act of July 9, 1976, Pub.L. 586, No. 142, § 5944. However, the statute is substantially and materially derived from the Act of March 23, 1972. *See* 1972 PA. LAWS 142–43, § 13, *repealed by* Act of April 28, 1978, Pub.L. 202, No. 53. Like the current statutory privilege, the original 1972 privilege protected a psychologist or psychiatrist from examination in any criminal or civil action as to information acquired in the course of his professional services without the written consent of the client. *Id.*[5]

 The PennDOT statutory provision at issue was enacted by the Act of June 17, 1976. *See* Pub.L. 162, No. 81, § 1518 (codified as amended at 75 PA. CONS.STAT. § 1518).[6] It is well-settled that "[a] 'cardinal principle of statutory interpretation' is that no provision 'shall be superfluous, void, or insignificant.'" *In re Phila. Newspapers, Inc.,* 599 F.3d 298, 330 (3d Cir. 2010) (quoting *TRW Inc. v. Andrews,* 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001)). The reporting requirement, enacted *subsequent to* the statutory psychiatrist-patient privilege *with* an exception to reporting and the use of those reports solely in driving competency proceedings, clearly does not exempt psychiatrists from the reporting directive. To conclude otherwise would render the Vehicle Code exception, which provides that no report "shall be sued as evidence in any civil or criminal trial, *except* in any proceeding" to determine driver competency, void at its

---

**5.** The 1972 statutory provision provided:

A person licensed as a psychologist under the provisions of this act cannot, without the written consent of his client, be examined in a civil or criminal action as to any information acquired in the course of his professional services in behalf of the client. The confidential relations and communication between a psychologist and his client are on the same basis as those provided by law between an attorney and client and nothing in this act shall be construed to

require any such privileged communication to be disclosed.
1972 PA. LAWS 142–43, § 13; *Compare id. and supra* note 4.

**6.** The 2004 amendment of § 1518 added the following professionals to the list of individuals required to report to PennDOT: podiatrists, chiropractors, physicians assistants, and certified registered nurse practitioners. *See* 2004 Pa. Legis. Serv. Act 2004–76, Pub.L. 698, No. 76.

inception. *See* 75 PA. CONS.STAT. § 1518 (emphasis added).

Nor can the court conclude that the current statutory psychiatrist-patient privilege—enacted less than one month after the physician reporting requirement and substantially the same as the prior 1972 version of the privilege—was passed by the Pennsylvania General Assembly to nullify the limited exception to the privilege established by the Vehicle Code reporting requirement. In fact, state courts have rejected this very argument with respect to the physician-patient privilege. In *McKay,* the court dismissed the plaintiff's argument that passage of the physician-patient privilege, which occurred after enactment of the vehicle code reporting requirement, exempted physicians from the reporting requirement. *See McKay,* 415 A.2d at 913–14. Notably, the Pennsylvania General Assembly enacted the physician-patient privilege and the psychiatrist-patient privilege through the same legislation. *See* Act of July 9, 1976, Pub.L. 586, No. 142, §§ 5929, 5944. Neither physicians nor psychiatrists are exempted from the vehicle code reporting requirement.

The information reported to PennDOT remains confidential and is used only for determining driver competency. *See* 75 PA. CONS.STAT. §§ 1518(d)–(e), 1519, 1550. Moreover, Dr. Behar must report to PennDOT *only* when in *his professional opinion* the patient's condition impairs the patient's ability to safely operate a motor vehicle. For all these reasons, Dr. Behar's substantive due process claim must fail.

### F. *Freedom of Association*

■ In Dr. Behar's sixth objection, he attempts to bootstrap a First Amendment freedom of association claim from the psychiatrist-patient relationship. (Doc. 44, at 27–30). Dr. Behar asserts that treating patients with certain disabilities "supports the advancement of a belief in an idea,

namely, the belief that people with disabilities have the right to medical treatment and have the right to participate as full members in our society." (Doc. 43, at 9). While imaginative, this assertion is ineffective to sustain a freedom of association claim. Judge Prince rightly concluded that Dr. Behar's professional relationship with his patients, undertaken for a profit, "fails to share sufficiently similar characteristics with those groups to whom First Amendment protection to freely associate has been afforded." (Doc. 37, at 37).

■ The First Amendment nowhere explicitly protects the freedom to associate, but the Supreme Court has recognized this freedom as a fundamental right protected by the Constitution. *NAACP v. Alabama,* 357 U.S. 449, 460–61, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958). By definition, it is the freedom to associate for the purposes of engaging in activities protected by the First Amendment, such as speech, assembly, petitioning the government, and the exercise of religion. *Roberts v. U.S. Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984).

Dr. Behar's association with a patient is an association in the broadest sense, i.e. an association of two, however, it is not the type of association protected by the First Amendment. Dr. Behar is dispensing fee-based mental health treatment to his patients; the association is not one formed for the purposes of advocacy or other First Amendment activity. *See Conant v. McCaffrey,* No. C 97–0139, 1998 WL 164946, at *3 (N.D.Cal.1998) (First Amendment freedom of association inapplicable to doctor/patient relationship). The mere fact that Dr. Behar may treat members of a protected class under the Civil Rights statutes or consider such treatment to advance societal acceptance of individuals with disabilities or illnesses does not transform his professional efforts into the

group advocacy recognized in *NAACP v. Alabama, supra; Conant,* 1998 WL 164946, at *4. However laudable his musings may be, treatment, not institutional effect, is the *sine qua non* of Dr. Behar's "association." For these reasons, the court denies Dr. Behar's sixth objection.

## G. *Invasion of Privacy*

 Dr. Behar asserts in his seventh objection that the PennDOT reporting requirement "constitutes a massive invasion of privacy interests due to its profound consequences on the patient." (Doc. 44, at 31). According to Dr. Behar, as a result of the mandatory reporting, patients decline to seek needed medical treatment in order to maintain their driving privileges. (*Id.* at 32).[7] The Pennsylvania Medical Society, the American Medical Association and the Pennsylvania Psychiatric Society (hereinafter collectively "Amici") filed an *amici curiae* brief in support of Dr. Behar on this claim. (Doc. 42). Amici raise many of the same arguments as Dr. Behar. They assert that patients have a substantial and constitutionally protected privacy interest in the confidentiality of their health records. (*Id.* at 12). Amici contend that PennDOT regulations are "impermissibly overbroad" and require reporting in many circumstances where there is no public interest in such reporting. (*Id.* at 15). For example, Amici assert that there are "transient or relatively short-lived" medical conditions that may affect an individual's driving ability, such as fractures or surgery, corrected vision and medication with sedating effects. (*Id.* at 18–19). These temporary impairments, they argue, will have ceased to effect driving skills well before PennDOT acts upon a physician's notice of such conditions. (*Id.* at 19).

Amici also assert that mandated reporting is not in harmony with medical ethics. (*Id.* at 22). The American Medical Association advocates a staged approach in which reporting is required only after less intrusive options fail. (*Id.*) Amici contend that many patients will "readily and credibly agree to stop driving," or will voluntarily subject their driving privileges to certain restrictions. (*Id.* at 21). Finally, Amici assert that a more comprehensive record is necessary to conduct a proper balancing of the patient's privacy interests versus the state's interest in ensuring the safe operation of vehicles by licensed drivers. (*Id.* at 24).

Judge Prince recommended granting judgment in favor of defendants on the privacy claim. He concluded that the state has a compelling interest in protecting motorists on the roadways and that the reporting requirement is narrowly tailored to achieve that end. (Doc. 37, at 28). He rejected Dr. Behar's suggestion that a permissive reporting scheme would be more narrowly tailored and found that the statutory psychiatrist-patient privilege does not outweigh the Commonwealth's legitimate interest in disclosure of patients with certain medical conditions. (*Id.* at 27, 28).

 Patients have a constitutionally protected privacy interest in their medical information. *Whalen v. Roe,* 429 U.S. 589, 602, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (constitutionally protected interest in avoiding disclosure of personal matters); *United States v. Westinghouse Elec. Corp.,*

---

7. The court notes with interest that, in the context of his privacy claim, Dr. Behar contends that the Commonwealth lacks a compelling state interest for its reporting requirement. (Doc. 44, at 30). Yet, in the context of other claims, he concedes propriety of the state interest, but challenges the means undertaken to address that interest. For example, in his void for vagueness challenge, Dr. Behar states that PennDOT's regulation is "not narrowly tailored to achieving the Commonwealth's admittedly compelling purpose." (*Id.* at 21).

638 F.2d 570, 577 (3d Cir.1980) ("There can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection."). Nonetheless, the right is not absolute. *See Doe v. Se. Pa. Transp. Auth.*, 72 F.3d 1133, 1139 (3d Cir. 1995); *Westinghouse Elec. Corp.*, 638 F.2d at 578. The Third Circuit has recognized that the 'public health or other public concerns may support access to facts an individual might otherwise choose to withhold.' (Doc. 37, at 24 (quoting *Westinghouse Elec. Corp.*, 638 F.2d at 578)). In particular, reporting requirements have been upheld when access to the information is used by the state to abate threats to public health and safety. *Westinghouse Elec. Corp.*, 638 F.2d at 578. A court must, therefore, balance an individual's privacy interests against the state interest.

The Third Circuit has established seven factors the court should consider in that balancing:

> the type of record requested, the information it does or might contain, the potential for harm in any subsequent nonconsensual disclosure, the injury from disclosure to the relationship in which the record was generated, the adequacy of safeguards to prevent unauthorized disclosure, the degree of need for access, and whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Id.* at 578.

In the case *sub judice*, the majority of the *Westinghouse* factors weigh in favor of disclosure. With respect to the type of record request, the court notes that Penn-DOT requires only a fraction of the infor-

mation contained in a patient's medical file—that which bears directly on a patient's ability to safely operate a motor vehicle. On the adequacy of safeguards, Pennsylvania statutorily mandates confidentiality: "The reports required by this section shall be confidential and shall be used solely for the purpose of determining the qualifications of any person to drive a motor vehicle on the highways of this Commonwealth." 75 PA. CONS.STAT. § 1518(d).[8] The need for access to this information—to ensure driver competency and road safety—is self-evident. Obviously, with respect to the final *Westinghouse* factor, the regulation stems from an express statutory mandate and is adequately supported by strong public policy. *See* 75 PA. CONS.STAT. §§ 1517, 1518, 1519. Admittedly, there is potential harm to the patient in the non-consensual disclosure of the patient's medical conditions to Penn-DOT. However, the likelihood of this harm is remote in light of the confidentiality provision of the reporting statute. *See id.* §§ 1518, 1519. It is also conceivable that the reporting requirement may adversely impact the psychiatrist-patient relationship by chilling patient candor. That potential harm is mitigated by the limited scope of information reported to PennDOT as well as the confidentiality provision. PennDOT does not collect detailed patient histories, but rather requires only the confidential reporting of disorders or disabilities that impair driving abilities. On balance, PennDOT's significant need for disclosure outweighs the potential harm to the patient.

The court also agrees with Judge Prince that Dr. Behar's permissive reporting scheme is not more narrowly tailored than the mandatory reporting requirement. A

---

**8.** The Vehicle Code also provides that the reports shall not be used as evidence in any criminal or civil trial except in proceedings to determine the competency of an individual to operate a motor vehicle. *See* 75 PA. CONS.STAT. § 1518(e); *see also* 75 PA. CONS.STAT. § 1519; 75 PA. CONS.STAT. § 1550.

permissive reporting scheme would place the burden on physicians to evaluate driving abilities and such subjectivity "would undoubtedly result in different assessments of similar impairments and produce less uniform outcomes throughout the Commonwealth." (Doc. 37, at 27).

Highway safety is a compelling state interest. *See Wroblewski v. Commonwealth,* 570 Pa. 249, 809 A.2d 247, 250 (2002). The mandatory physician reporting requirement is narrowly tailored to achieve that interest. *See Witthoeft v. Kiskaddon,* 557 Pa. 340, 733 A.2d 623, 627 (1999). In this instance, the privacy interests of Dr. Behar's patients are outweighed by the state's compelling interest. The concerns of the medical community are not acute, and the safe operation of vehicles on Pennsylvania roadways compels a broader consideration of issues than those asserted by Dr. Behar and Amici.

### H. *Title II of the ADA*

█ Finally, Dr. Behar contends in his eighth objection that Judge Prince erroneously interpreted Title II of the Americans with Disabilities Act ("ADA") and overlooked the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") in recommending judgment in favor of defendants. (Doc. 44, at 33–37). The relevant statutory provision of the ADA provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.[9] Dr. Behar asserts that the last clause, "or be subjected to discrimination by any such entity," is a catch-all phrase not limited (like the first clause) to conduct that occurs within the services, programs or activities of a public entity. (Doc. 44, at 33). Dr. Behar further contends that Judge Prince erred in relying upon employment discrimination cases in his analysis of the clause because they are irrelevant to the issue at bar, to wit: whether Title II applies to PennDOT's promulgation of a mandatory reporting regulation. (*Id.* at 33, 35–36).

Courts in this district have limited the application of § 12132 to discrimination in a public entity's services, programs or activities. (Doc. 37, at 40). Consequently, Judge Prince concluded that Dr. Behar's treatment of his patients does not fall within the ambit of "services, programs or activities" as defined in this jurisdiction. (*Id.* at 39–41). The court agrees with Judge Prince's assessment.

In *Pennsylvania State Troopers Ass'n v. Pennsylvania,* this court discussed Title II of the ADA (§ 12132). No. 1:06–CV–1079, 2007 WL 853958, at *5–8 (M.D.Pa. Mar. 20, 2007). Although in the context of an employment discrimination case, the court's analysis is equally applicable to the instant case. Significantly, the court determined that the second clause did not encompass a cause of action for any and all discrimination by a public entity. *Id.* at *6. We explained that construing the second clause as an umbrella phrase prohibiting all discrimination of any kind by a public entity, *including* employment discrimination, is inconsistent with the plain language of Title II of the ADA as a whole. *Id.* Congress specifically defined a "qualified individual with a disability" under Title II as:

9. Dr. Behar asserts that the "ADAAA has significantly increased the rights of disabled persons with respect to discriminatory conduct by the government," (Doc. 44, at 36), but fails to indicate how the increased rights affect the provision at issue. The ADAAA did not amend § 12132. *See* Pub.L. No. 110–325, 122 Stat. 3553.

an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). This definition, the court noted, echoes the "services, programs, or activities" language of the first clause of § 12132. *Pa. State Troopers Ass'n,* 2007 WL 853958, at *6. Therefore, the court concluded that "[a]lthough the second clause of § 12132 appears to be all-encompassing, it is limited by Title II's definition of 'qualified individual with a disability.'" *Id.; see also Zimmerman v. Oregon Dep't of Justice,* 170 F.3d 1169, 1175–76 (9th Cir.1999). Dr. Behar's treatment of his patients is not a service, program, or activity of PennDOT; therefore, he cannot sustain a claim under Title II of the ADA.

Dr. Behar also asserts a cause of action under the ADA on behalf of his patients. He argues that his patients' procedural due process rights are infringed on the basis of their disabilities. Specifically, he contends that PennDOT summarily recalls patients' licenses without appropriate investigation, forcing patients to appeal. (Doc. 44, at 36–37). Judge Prince rejected this argument. He concluded that the PennDOT's recall procedure does not differentiate with regard to disability but rather with respect to competency to operate a motor vehicle, a nondiscriminatory distinction. (*See* Doc. 37, at 43–33). The court finds no error in this conclusion.

The cases cited by Dr. Behar do not support his argument. In *Byler v. Commonwealth Department of Transportation,* 883 A.2d 724 (Pa.Commw.Ct.2005), the court rejected PennDOT's argument that

*only* medical evidence is sufficient to rebut its *prima facie* case of incompetency to operate a motor vehicle. The court looked to the applicable statutory and regulatory provisions and found no indication that a patient was required to present medical evidence to rebut PennDOT's *prima facie* case of incompetency. *Id.* at 728–29.

In *Peachey v. Commonwealth Department of Transportation, Bureau of Driver Licensing,* 979 A.2d 951 (Pa. Commw.Ct.2009), the court rejected PennDOT's contention that the trial court erred in reinstating the driving privileges of a licensee whose license was suspended after he suffered a seizure. PennDOT regulations require suspension of a license until the licensee is seizure-free for six months. *See* 67 PA.CODE § 83.4. Nevertheless, the trial court accepted medical testimony from the licensee's doctor that the licensee was competent to drive only two months after suffering the seizure. *Id.* at 955–56 (discussing *Com. Dept. of Transp., Bureau of Driver Licensing v. Clayton,* 546 Pa. 342, 684 A.2d 1060 (1996)). The trial court concluded that due process requires the court to consider, if proferred, an independent assessment of competency; therefore, PennDOT regulations do not create an irrebuttable presumption of incompetency to drive. *Id.* Given this explicit recognition of a licensee's due process rights in competency proceedings, *Peachey, supra* does not undergird Dr. Behar's argument.

## IV. *Conclusion*

For the foregoing reasons the court will adopt the report and recommendation (Doc. 37) of the magistrate judge in its entirety.

An appropriate order is attached.

### *ORDER*

AND NOW, this 31st day of March, 2011, upon consideration of the report

(Doc. 37) of the magistrate judge recommending that defendants' motion (Doc. 18) for judgment on the pleadings be granted with respect to all counts of the complaint except for the Supremacy Clause challenge in Count I of the complaint to the extent the PennDOT regulation requires disclosure of the medical record of any individual participating in a federally assisted alcohol or drug treatment program pursuant to the Drug Abuse Prevention, Treatment and Rehabilitation Act, 42 C.F.R. §§ 2.1 *et seq.*, and upon further consideration of the objections (Doc. 43) to the report and recommendation filed by plaintiff and the brief of *amici curiae* (Doc. 42) filed by the Pennsylvania Medical Society, the American Medical Association, and the Pennsylvania Psychiatric Society on behalf of plaintiff, and for the reasons stated in the accompanying memorandum, it is hereby ORDERED that:

1. The report of the magistrate judge (Doc. 37) is ADOPTED in its entirety.
2. Defendants' motion (Doc. 18) for judgment on the pleadings is GRANTED in part, and DENIED in part as follows:
 a. The motion is DENIED with respect to the Count I Supremacy Clause challenge to the extent PennDOT's regulation requires disclosure of the medical record of any individual participant in a federally assisted alcohol or drug treatment program.
 b. The motion is GRANTED in all other respects.

### REPORT and RECOMMENDATION

WILLIAM T. PRINCE, United States Magistrate Judge.

### I. Procedural Background

Pursuant to an Order entered on August 3, 2010 (Doc. 35), the Honorable Christopher C. Conner referred the pending Motion for Judgment on the Pleadings to the undersigned for the purpose of preparing a Report and Recommendation.

Plaintiff, David Behar, M.D., commenced this action by filing a complaint in the United States District Court for the Eastern District of Pennsylvania on June 28, 2009 (Doc. 1)., challenging Commonwealth of Pennsylvania, Department of Transportation ("PennDOT") Regulations, 67 Pa.Code § 83, issued under the Vehicle Code, 75 Pa.C.S.A. §§ 1517, 1518 and 6103, which require health care professionals to report to the Department of Transportation every patient over fifteen years of age who is affected by any of a number of listed medical conditions which could impact their ability to safely operate a motor vehicle. The complaint asserts violations of the Supremacy Clause in light of the Drug Abuse Prevention, Treatment and Rehabilitation Act, 42 C.F.R. §§ 2.1, *et seq.;* due process violations under the Fifth and Fourteenth Amendments for both vagueness and interference with the right to practice one's profession; violations of free association under the First and Fourteenth Amendments; violations of privacy rights under the Ninth and Fourteenth Amendments; and violations of both the Americans with Disabilities Act, 42 U.S.C. § 12132, *et seq.* and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) *et seq.*

Named as Defendants are the Commonwealth of Pennsylvania, Department of Transportation ("PennDOT") and Allen Biehler, Secretary of Transportation for the Commonwealth of Pennsylvania. On December 14, 2009, the action was transferred to this court inasmuch as the Secretary, as a state official acting in his state capacity, is considered a resident of the capital, Harrisburg, Pennsylvania, which is located within the jurisdictional boundaries of the United States District Court for the

Middle District of Pennsylvania. (*See* Docs. 6–7).

On February 16, 2010, Defendants filed Motion for Judgment on the Pleadings (Doc. 18), and thereafter filed a supporting brief on February 19, 2010 (Doc. 21). Plaintiff filed a Reply and a Brief in Opposition to the Motion on March 19, 2010 (Docs. 25–26), to which Defendants filed a Reply Brief on April 16, 2010. (Doc. 32). The matter is now ripe for disposition. For the reasons that follow, it will be recommended that the Motion for Judgment on the Pleadings be granted in part and denied in part.

## II. Factual Background

Plaintiff is a health care provider and psychiatrist licensed to practice medicine by the Commonwealth of Pennsylvania. PennDOT is the state authority responsible for assessing an individual's ability to drive. It has promulgated regulations which require health care providers such as Plaintiff to notify it of patients who are affected by certain conditions, as determined by the Medical Advisory Board, which may impair their ability to safely operate a motor vehicle. *See* 75 Pa.C.S.A. § 1517, *et seq.;* 67 Pa.Code §§ 83.5 and

83.6.[1] Failure to report such individuals can result in a summary offense and fine of $25.00.[2] Plaintiff seeks injunctive relief by way of an order prohibiting Defendants from enforcing the regulations.

## III. Standard of Review

Federal Rule of Civil Procedure 12(c) provides:

After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

Fed.R.Civ.P. 12(c). The standard of review for a motion for judgment on the pleadings is plenary. *Jablonski v. Pan Am. World Airways, Inc.,* 863 F.2d 289, 290 (3d Cir.1988). Judgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law. *Society Hill Civic Ass'n v. Harris,* 632 F.2d 1045, 1054 (3d Cir.1980). The court must view the facts presented in the pleadings and the inferences to be drawn

---

**1.** The relevant subsection provides:

Disqualification on provider's recommendation. A person who has any of the following conditions will not be qualified to drive if, in the opinion of the provider, the condition is likely to impair the ability to control and safely operate a motor vehicle:

\* \* \* \* \* \*

(7) Use of any drug or substance, including alcohol, known to impair skill or functions, regardless whether the drug or substance is medically prescribed.

(8) Other conditions which, in the opinion of a provider, is likely to impair the ability to control and safely operate a motor vehicle.

67 Pa.Code § 83.5(b). Further, the reporting regulation states:

Providers to report unqualified persons.

Physicians and other persons authorized to diagnose and treat disorders and disabilities defined by the Medical Advisory Board shall report to the Department, in writing, the full name, date of birth and address of every person 16 years of age and older diagnosed as having any specified disorder or disability within 10 days, under 75 Pa. C.S. § 1518 (relating to reports on mental or physical disabilities or disorders).

67 Pa.Code § 83.6.

**2.** Although referenced in the briefs as a criminal penalty, the punishment for failure to report a potentially-impaired individual is a summary offense, which is contained within the transportation code, not the criminal code, and which carries a fine of $25.00. 75 Pa.C.S.A. § 6502.

therefrom in the light most favorable to the nonmoving party. *Id.*

Courts have applied the same standard of review for a motion for judgment on the pleadings under Rule 12(c) as they do for a motion to dismiss under Rule 12(b).[3] The standard of review used for a motion for judgment on the pleadings is substantively identical to that of a motion to dismiss; the difference between the two is procedural—a motion for judgment on the pleadings is filed after the pleadings are closed, and a motion to dismiss is filed in lieu of an answer. *See Woolley v. Commonwealth of Pa.,* No. 03–1031, 2006 WL 485850, *1 (M.D.Pa. February 27, 2006); *Rose v. Bartle,* 871 F.2d 331, 342 (3d Cir. 1989); *Regalbuto v. City of Philadelphia,* 937 F.Supp. 374, 376–77 (E.D.Pa.1995) (stating that "[c]ourts have applied the same standard of review for a motion for judgment on the pleadings under Rule 12(c) as they do for a motion to dismiss under Rule 12(b)").

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Nami v. Fauver,* 82 F.3d 63, 66 (3d Cir.1996). First, the court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff. *Innis v. Wilson,* 334 Fed.Appx. 454, 456 (3d Cir.2009) (*citing Phillips v. County of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008)). However, "the tenet that a court must accept as true all of the allegations contained in a com-

plaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must then determine whether the complaint states a plausible claim for relief, which is a "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557–58, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

## IV. Discussion

Plaintiff challenges the regulations on several grounds. Each will be addressed *in seriatim.*[4]

### (A) Standing

Defendants contend first that Plaintiff lacks standing to bring the present action inasmuch as he has neither been charged nor threatened with a charge for failing to disclose information sought by the PennDOT regulation. In fact, PennDOT regulation 67 Pa.Code § 83.6 has never been enforced against health care providers who fail to disclose the information regarding potentially unsafe drivers.

The requirements for Article III standing are well established, and require a plaintiff to prove: (1) injury in fact, (2) a causal connection between the injury and the challenged action, and (3) a likelihood that the injury is redressable by a favorable judicial decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Pa. Psychiatric Soc'y v. Green Spring Health Servs.,*

---

**3.** The only notable difference between these two standards is that the court in a motion for judgment on the pleadings reviews not only the complaint but also the answer and written instruments attached to the pleadings. 2 Moore's Federal Practice Civil § 12.38 (2004).

**4.** Defendants assert, and Plaintiff concedes, that the Eleventh Amendment bars Plaintiff's §§ 1983 and 1988 claims against PennDOT. *See* Doc. 26, p. 5–6.

280 F.3d 278, 288 n. 8 (3d Cir.2002). A plaintiff invoking federal jurisdiction bears the burden of establishing these elements. *See FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement. *O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). However, he "does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117 (1923). When a plaintiff "do[es] not claim that [he has] ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible," he has not alleged a dispute susceptible to resolution by a federal court. *Younger v. Harris,* 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

However, as will be discussed later, Plaintiff can meet the standing requirement as a third-party to challenge the regulation on behalf of his patients. Inasmuch as Plaintiff has articulated injury to patients, *to wit,* that as a result of the regulation, his patients may be less truthful and less candid with him which, in turn, may compromise their treatment, injury has been established. Moreover, the causation issue between the regulation and the alleged injury—patients being less truthful and less candid with Plaintiff which, in turn, has the potential to affect their treatment—has also been established. Finally, the prospective injunctive relief is redressable. Consequently, the Plaintiff has established standing to bring the present action.

### (B) Preemption[5]

The Supremacy Clause[6] invalidates all state laws that conflict or interfere with an act of Congress. *Rose v. Arkansas State Police,* 479 U.S. 1, 107 S.Ct. 334, 93 L.Ed.2d 183 (1986). A preemption analysis should begin with a recital of the analytical scheme by which a court should be guided:

> Under the supremacy clause, federal law may preempt state law in any of three ways; first, when in enacting federal law, Congress explicitly defines the extent to which it intends to preempt state law; second, when even in the absence of express preemptive language, Congress indicates an intent to occupy an entire field of regulation and has left no room for states to supplement the federal law; and, finally, when compliance with both state and federal law is impossible or when state law stands as an obstacle to accomplishment and execution of the full purposes and objectives of Congress. *Michigan Canners and Freezers Association, Inc. v. Agricultural Marketing and Bargaining Board,* 467 U.S. 461, 104 S.Ct. 2518, 81 L.Ed.2d 399(1984); *Capital Cities Cable, Inc. v.*

---

5. Inasmuch as courts have held that the applicable federal regulation, 42 C.F.R. § 2.20, which states that "no State law may either authorize or compel any disclosure prohibited by these regulations," does not give rise to a private cause of action, Plaintiff concedes that he is unable to bring a preemption challenge pursuant to § 1983. He asserts, however, that, to the extent that the complaint seeks prospective injunctive relief, he has stated a claim under 28 U.S.C. § 1331.

6. The Supremacy Clause of the United States Constitution prohibits state actions which interfere with matters where the federal government has spoken. The seminal statement on preemption originated from Chief Justice Marshall in *McCulloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 436, 4 L.Ed. 579 (1819): "States have no power ... to retard, impede, burden or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government...."

*Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984).

*Kentucky West Virginia Gas Co. v. Pennsylvania Public Utility Com'n,* 837 F.2d 600, 605–06 (3d Cir.1988). "[T]he question whether a certain state action is pre-empted by federal law is one of congressional intent." *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 45, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (internal citations omitted).

It is not suggested herein that federal law explicitly preempts the regulation or that Congress intended, via legislation, to preempt the entire field of medical disclosures. Therefore a conflict between federal law and state law must be present for the regulation to be preempted. *See Lozano v. City of Hazleton,* 620 F.3d 170 (3d Cir.2010). Such a conflict exists where either (1) the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" or (2) it is "impossible for a ... party to comply with both state and federal law." *Geier v. Am. Honda Motor Co., Inc.,* 529 U.S. 861, 899, 120 S.Ct. 1913, 146 L.Ed.2d 914 (2000); *Pokorny v. Ford Motor Co.,* 902 F.2d 1116, 1120 (3d Cir.1990); *C.E.R.1988, Inc. v. Aetna Cas. & Sur. Co.,* 386 F.3d 263, 268 (3d Cir.2004).

The Supreme Court has urged caution in the application of conflict preemption: "[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly preempt state-law causes of action." *C.E.R.1988,* 386 F.3d at 269–70 (quoting *Medtronic Inc. v. Lohr,* 518 U.S. 470, 485, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). Thus, conflict preemption will be found only if the need for it is clear. *Pokorny,* 902 F.2d at 1122. "[C]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Bldg. & Constr. Trades Council of Metro. Dist. v. Assoc. Builders & Contractors of Mass./*

*R.I., Inc.,* 507 U.S. 218, 224, 113 S.Ct. 1190, 122 L.Ed.2d 565 (1993).

In the instant matter, Plaintiff claims that the PennDOT regulation is in conflict with, and preempted by, the Drug Abuse Prevention, Treatment and Rehabilitation Act, 42 C.F.R. § 2.1, *et seq.,* which was subsequently incorporated under the Public Health Services Act ("PHSA"), 42 U.S.C. § 290dd–2. Under PHSA, the disclosure of medical record information for those receiving or participating in federally-assisted substance abuse treatment is restricted. Plaintiff challenges the constitutionality of the PennDOT regulation both on its face and as applied. Defendants contend, however, that there is no conflict inasmuch as the PHSA applies only to federal substance abuse programs and operates neither to create a privilege covering any and all records of substance abuse treatment nor to prevent the disclosure of all medical information.

### 1. Facially

With a facial challenge, a court can determine whether a regulation is valid simply by looking at its terms, not its particular application. *Doe v. City of Butler, P.A.,* 892 F.2d 315, 325–26 (3d Cir.1989) (dissent) (quoting D. Mandelker, J. Gerald, E. Sullivan, *Federal Land Use Law* § 1.04 at 1–10). A statute is not facially unconstitutional unless "no set of circumstances exists under which the Act would be valid." *Khouzam v. Attorney General of U.S.,* 549 F.3d 235, 258 (3d Cir.2008) (quoting *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). Consequently, if the regulation has any legitimate application, a facial challenge must fail. *See Wash. State Grange v. Wash. State Republican Party,* 552 U.S. 442, 449, 128 S.Ct. 1184, 170 L.Ed.2d 151 (2008). To defeat a facial challenge to the regulation, Defendants need "merely to identify a

possible" valid application of the challenged statute. *Baltimore & Ohio R.R. Co. v. Oberly*, 837 F.2d 108, 116 (3d Cir. 1988); *California Coastal Comm's v. Granite Rock Co.*, 480 U.S. 572, 593, 107 S.Ct. 1419, 94 L.Ed.2d 577 (1987).[7]

Plaintiff maintains that the PHSA requires that all substance abuse treatment records be kept confidential, except in limited circumstances, set out in the Act, which do not apply to the instant case. Because the PHSA limits its application to federally-assisted substance abuse programs, there would be no conflict between it and PennDOT regulation's reporting requirement regarding individuals to whom Plaintiff provided medical services for substance abuse that were not part of a federal programs or where he treated individuals for conditions other than substance abuse treatment. Individuals in these circumstances would not fall within the scope of PHSA and therefore the medical information sought by the regulation would not be shielded from disclosure. Having articulated contexts in which the regulation is valid, Defendants have surmounted a facial challenge to the regulation.

### 2. As applied

■ A statute that is not facially preempted by federal law may nonetheless be preempted as it is applied. Plaintiff argues that the unconstitutional effect can arise prior to enforcement of the regulation. Indeed, courts have allowed challenges to legal questions without requiring the plaintiff to incur the penalties of noncompliance. *Amnesty Intern. USA v. McConnell*, 646 F.Supp.2d 633, 649–50 (S.D.N.Y.2009); *Babbitt v. United Farm*

*Workers National Union*, 442 U.S. 289, 302–03, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (granting standing for pre-enforcement challenge to certain provisions of statute based on "realistic danger" of enforcement where plaintiffs intended to engage in conduct "arguably prohibited by the statute"); *Pacific Capital Bank, N.A. v. Connecticut*, 542 F.3d 341, 350 (2d Cir. 2008) (finding standing for pre-enforcement challenge by national bank to state statute limiting certain interest rates where plaintiff "reasonably interpreted [the statute's] limitation as, on its face, applying to [the plaintiff]").

Defendants maintain that, inasmuch as the State has never enforced the provision through the imposition of a fine on health care providers who fail to adhere to the reporting requirement regarding impaired or disabled patients, the regulation cannot be said to conflict with federal law prior to its application. *See Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (holding that speculative or hypothetical conflict is not sufficient: only State law that actually conflicts with federal law is preempted). Conceding that "the federal regulations at issue prevent physicians from disclosing information about individuals in a federally assisted alcohol and drug abuse program," Defendants contend that the absence of an application or interpretation of PennDOT regulations has avoided the conflict with federal law. (*See* Doc. 32, p. 9).

Defendants do not maintain that the medical record of any individual participant of a federally assisted alcohol or drug treatment program has never been turned

---

7. Following recent case law in this circuit, the court declines to abandon the *Salerno* holding in favor of *Chevron* (where a facial challenge was upheld despite valid applications of the regulation) or an "undue burden" theory advanced by Plaintiff. *Brown v. City of Pittsburgh*, 586 F.3d 263, 269 (3d Cir.2009) (applying *Salerno* analysis); *Good v. Borough of Steelton*, 2008 WL 4454058, *6 (M.D.Pa. Sept. 30, 2008) (same); *Khouzam v. Attorney General of U.S.*, 549 F.3d 235, 258 (3d Cir.2008); *Belitskus v. Pizzingrilli*, 343 F.3d 632, 648 (3d Cir.2003).

over to PennDOT pursuant to the mandatory reporting requirement. Assuming that such information has been disclosed from a health care provider to PennDOT, a violation of the federal provisions has occurred. It is the reporting or disclosure, not the imposition of a penalty on health care providers for their failure to report such information, that is the event that triggers an infraction of the federal regulations.

The court agrees that, to the extent an "as applied" preemption challenge can arise prior to enforcement of PennDOT's regulations, Plaintiff has stated an actual one, as opposed to a hypothetical one, by demonstrating herein that he must choose between following the PennDOT regulation by disclosing the medical record of individuals participating in a federally assisted alcohol or drug treatment program or abiding by the federal regulations requiring such information to be kept confidential. Consequently, the Motion for Judgment on the Pleadings should be denied as it relates to Plaintiff's claim that the PennDOT regulation is preempted by federal law as applies to the disclosure of the medical record of any individual participant of a federally assisted alcohol or drug treatment program.[8]

### (C) Vagueness[9]

Plaintiff also challenges the language of the regulation as vague. The question presented is whether the phrase "[o]ther conditions which, in the opinion of a provider, is likely to impair the ability to control and safely operate a motor vehicle." 63 Pa. Code. § 83.5(b)(8). Contending that he is not properly informed as to what type of

opinion triggers the reporting requirement, that a health care provider may not have the qualifications to render an opinion on driving abilities and that the Medical Advisory Board is not authorized to require reporting of any conditions other that those it specifies as having been diagnosed, Plaintiff argues the regulation is impermissibly vague.

A statute is "void for vagueness" if it "forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). Generally, the void-for-vagueness doctrine requires that a standard define the conduct "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983). A court must ensure that a statute or standard is fair in that it is not so vague that a party would not know what conduct is prohibited. *San Filippo v. Bongiovanni,* 961 F.2d 1125, 1136 (3d Cir.1992). Thus, a statute will be found unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning." *Broadrick v. Oklahoma,* 413 U.S. 601, 607, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) (quoting *Connally, supra* at 391, 46 S.Ct. 126). The inquiry is conducted on a case-by-case basis, and the party opposing the statute or standard

---

**8.** The court recognizes that Plaintiff fails to distinguish how the permissive reporting requirement that he advances would permit disclosure of such information and/or would not conflict with federal law.

**9.** Defendants claim that while Plaintiff's claims against Biehler may be actionable un-

der the 14th Amendment, they are not properly asserted under the 5th Amendment inasmuch as there is no federal actor. Plaintiff does not challenge this position and, consequently, Count II should be dismissed to the extent it seeks to state a claim arising under the 5th Amendment.

must show that it is vague as applied to him. *San Filippo,* 961 F.2d at 1136.

Plaintiff first contends that the regulation sets forth no standard other than the "opinion" of the health care provider, which is inadequate to determine what reporting is required. He claims obscurity as to whether a lay or professional opinion is to be the standard, whether he is required to report non-medical conditions which may impair one's ability to drive, or whether reporting of conditions of which he is aware but which fall outside his area of expertise is mandated. Defendants maintain that the regulation is not void for vagueness, contending that the regulation itself is instructive on what is sought from health care providers. The court agrees.

First, a person will not be deemed qualified to drive if he suffers from any listed disabilities or "[o]ther conditions which, *in the opinion of a provider,* is likely to impair the ability to control and safely operate a motor vehicle." 67 Pa.Code § 83.5(b)(8). Clearly the standard governing this opinion is the provider's professional. opinion. Moreover, the phrase "likely to impair" does not require health care providers to become assessors of driving skills and abilities as Plaintiff argues. Without addressing the severity, duration or prognosis of a reportable disorder or disability, and regardless of whether a person is driving or not, the regulation merely requires health care providers such as Plaintiff to report individuals with conditions which the health care provider opines may impact the safe operation of a vehicle. Health care providers need not consider whether a condition is temporary or permanent, treatable or untreatable or whether a patient is driving or refraining from driving. Such inquiries are secondary to the presence of any condition which the provider believes may affect one's ability to safely operate a car, and the existence of such variables with respect to any impairment will not render the statute vague. This reporting requirement makes clear what information is to be provided: "Physicians and other persons authorized to diagnose and treat disorders and disabilities . . . shall report to the Department . . . every person . . . diagnosed as having any specified disorder or disability[.]" 67 Pa.Code § 83.6. Compliance with this regulation, accordingly, requires the report of only persons diagnosed with a *specified* disorder or disability.

Finally, Plaintiff challenges the Medical Advisory Board's definition of reportable impairments, contending it has failed to "define" disorders by leaving to a provider's opinion non-specified disorders encompassed by the regulation. However, the Medical Advisory Board has not abrogated the authority it has been delegated, *to wit,* to define disorders and disabilities affecting the ability to drive safely, by placing additional reporting requirements, beyond the listed and specified disorders, for those conditions a provider feels are likely to impair one's ability to drive. *See* 75 Pa. C.S.A. § 1518(a). A catch-all phrase such as "[o]ther conditions which, in the opinion of a provider, is likely to impair the ability to control and safely operate a motor vehicle" is general enough to encompass impairments which may not be listed but which nonetheless would have an effect on the ability to drive safely while also being sufficiently specific as to what is required of health care providers.

Inasmuch as "ordinary persons using ordinary common sense" would be aware or what is required, the regulation is not void for vagueness. *San Filippo, supra* at 1136 (citing *Arnett v. Kennedy,* 416 U.S. 134, 159, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974)). This argument should, accordingly, be rejected.

## (D) Right to Privacy

Plaintiff contends next that the PennDOT regulation violates his right to privacy. Specifically, he argues that therapists and other health care providers must have the trust and confidence of their patients to properly treat them, and that the regulation infringes into the privacy of information contained in medical records. He further asserts that he has standing to raise the issue on behalf of those he treats.

Defendants claims that the regulation is rationally related to a compelling state interest and has only an indirect and incidental effect on Plaintiff's practice. Moreover, they maintain that any loss of business suffered by Plaintiff as a result of the regulation is not protected.

### 1. Standing[10]

Ordinarily, "a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio,* 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *see also Barrows v. Jackson,* 346 U.S. 249, 255, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953). In limited circumstances, however, the Supreme Court has approved third party standing where the policies supporting the general rule are not served. *See Singleton v. Wulff,* 428 U.S. 106, 114–15, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). "Where rightholders are unable to raise their own rights and their relationship with the plaintiff suggests an identity of interests, courts can be more certain that the litigation is necessary and that the issues will be framed clearly and effectively." *Amato v. Wilentz,* 952 F.2d 742, 748 (3d Cir.1991) (citing *id.* at 114–16, 96 S.Ct. 2868).

Third-party standing requires the satisfaction of three preconditions: 1) the plaintiff must suffer injury; 2) the plaintiff and the third party must have a "close relationship"; and 3) the third party must face some obstacles that prevent it from pursuing its own claims. *Pennsylvania Psychiatric Soc. v. Green Spring Health Services, Inc.,* 280 F.3d 278, 288–89 (3d Cir.2002) (citations omitted). A court must balance these factors to determine if third-party standing is warranted. *Id.* at 289.

■ Plaintiff first asserts the regulation in question has caused injury to him by creating a dilemma of violating state law by not reporting patients who are potentially unsafe drivers or by forsaking his code of ethics which requires him to treat his patients through the exchange of candid yet confidential information. Undermining a health care provider's ability to effectively treat his patients states sufficient injury to meet the first element of a third-party standing inquiry.

As to the second factor, Plaintiff submits that the psychiatrist-patient association is sufficiently special to permit him to advocate and be an effective proponent of his patients and their rights. Courts have recognized that the physician-patient relationship is one conferring third-party standing on physicians on behalf of patients to challenge a statute. *See Singleton, supra; Planned Parenthood v. Farmer,* 220 F.3d 127, 147 & n. 10 (3d Cir.2000); *Am. Coll. of Obstetricians & Gynecologists v. Thornburgh,* 737 F.2d 283, 290 & n. 6 (3d Cir.1984) (collecting cases where physicians allowed to assert patients' claims). Consequently, the court concludes that this prong is satisfied.

Finally, Plaintiff maintains that the stigma associated with mental health treatment presents an obstacle to a challenge of the PennDOT regulation by patients them-

---

**10.** The court notes that the Defendants do not challenge Plaintiff's standing as it related to his ability to assert a privacy claim on behalf of his patients.

selves. Such a desire to protect privacy has been found to be an impediment to litigation sufficient to meet the third factor. *See Singleton, supra; Pa. Psychiatric Soc'y, supra.* The Plaintiff has, accordingly, established third-party standing.

### 2. Patients right to privacy

Plaintiff contends that there is a constitutional right to privacy regarding information in one's medical file(s) upon which the PennDOT regulation infringes by requiring disclosure of certain information by health care providers. While recognizing such a privacy right, Defendants submit that this right is not absolute. *Citizens for Health v. Leavitt,* 428 F.3d 167, 178 n. 10 (3d Cir.2005) ("[T]he question of the scope of the constitutional right to privacy in one's medical information is largely unresolved."); *Whalen v. Roe,* 429 U.S. 589, 602, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977) (recognizing that, despite constitutionally protected interest in avoiding disclosure of personal matters, "disclosures of private medical information to doctors, to hospital personnel, to insurance companies, and to public health agencies are often an essential part of modern medical practice even when the disclosure may reflect unfavorably on the character of the patient"); *United States v. Westinghouse Elec. Corp.,* 638 F.2d 570, 578 (3d Cir.1980) ("[T]he right of an individual to control access to his or her medical history is not absolute.").

"[T]he Constitution embodies a promise that a certain private sphere of individual liberty will be kept largely beyond the reach of government." *Thornburgh v. American College of Obstetricians,* 476 U.S. 747, 772, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986). This constitutional right to privacy extends to "the individual interest in avoiding disclosure of personal matters." *Whalen v. Roe,* supra at 599, 97 S.Ct. 869; *Trade Waste Management Ass'n, Inc. v. Hughey,* 780 F.2d 221, 223 (3d Cir.1985);

*see also* Kurland, *The Private I,* The University of Chicago Magazine 7, 8 (Autumn 1976) ("The concept of a constitutional right of privacy [includes] the right of an individual not to have his private affairs made public by the government."). Courts have held that medical records are clearly within this constitutionally protected sphere. *See, e.g., Whalen,* 429 U.S. at 598, 97 S.Ct. 869; *Westinghouse Elec. Corp.,* 638 F.2d at 577 ("There can be no question that an employee's medical records, which may contain intimate facts of a personal nature, are well within the ambit of materials entitled to privacy protection."); *Shoemaker v. Handel,* 608 F.Supp. 1151, 1159 (D.N.J.1985) ("There is a privacy interest in avoiding disclosure to government agents of personal medical information.").

Therefore, the court will assume that, while not fundamental, there is a constitutionally-protected right to privacy of an individual's medical information which may be implicated by operation of the regulation. It must be determined, therefore, whether the regulation violates the privacy rights of Plaintiff's patients.

### 3. Balance of right to privacy v. state interest

"In recognition that the right of an individual to control access to her or his medical history is not absolute, courts and legislatures have determined that public health or other public concerns may support access to facts an individual might otherwise choose to withhold." *Westinghouse Elec. Corp., supra* at 578. Accordingly, "disclosures regarding past medical history, present illness, or the fact of treatment have been required." *Id.* In instances where a reporting requirements has been upheld include instances where the State "advanced a need to acquire the

information to ... control threats to public health." *Id.*

Any privacy rights must be balanced against the legitimate interests of the State in securing such information. Moreover, the regulation must be narrowly tailored to "express only those compelling state interests." *McKenna v. Fargo*, 451 F.Supp. 1355, 1381 (D.N.J.1978). Factors to be considered by a court in determining whether an intrusion into an individual's privacy is justified include:

> (1) the type of record requested, (2) the information it does or might contain, (3) the potential for harm in any subsequent nonconsensual disclosure, (4) the injury from disclosure to the relationship in which the record was generated, (5) the adequacy of safeguards to prevent unauthorized disclosure, (6) the degree of need for access, and (7) whether there is an express statutory mandate, articulated public policy, or other recognizable public interest militating toward access.

*Westinghouse Elec. Corp.* at 578.

Defendants argue that even if Plaintiff's patients have a cognizable right to privacy, the Commonwealth has a compelling state interest in maintaining safe roadways, which outweighs any privacy right raised by Plaintiff. They contend, further, that the regulation is rationally related to the state interest and narrowly tailored to achieve that interest. *See McKay v. Com.*, 52 Pa.Cmwlth. 24, 415 A.2d 910 (Pa. Commw.1980), *appeal dismissed* 499 Pa. 223, 452 A.2d 1019 (Pa.1982) (allowing disclosure of information obtained by psychiatrist from operator for purpose of determining operator's competency to operate motor vehicle did not violate operator's constitutional right of privacy in light of fact that, though allowing such disclosure constituted an intrusion on operator's right to privacy, such intrusion was outweighed by public interest in having incompetent drivers removed from high-

ways). In balancing the *Westinghouse* factors, Defendants contend only two—injury to the physician-patient relationship and public disclosure could tend to embarrass patients—weight against the intrusion into the privacy of Plaintiff's patients. The other five elements shift the balance in Defendants favor: the information sought is not entire medical files but limited to the diagnosis of specified conditions, with some personal information such as name, address date of birth, already known by PennDOT; the disclosures are kept confidential and are used for a limited purpose with safeguards in place to prevent unauthorized disclosure; the Commonwealth need for access to this information to ensure the competency of drivers on its roads, and health care providers are arguably in the best position to provide this information; and the regulation in question was enacted pursuant to express statutory mandate to ensure the legitimate state interest of promoting the safety of Pennsylvania's roads.

Plaintiff agrees that Pennsylvania has a legitimate state interest—to promote safe roadways in the Commonwealth—but maintains that mandatory reporting requirement is not narrowly tailored to achieve that goal. He argues, further, that there are less intrusive means to accomplish the State's objective. While suggesting that a permissive reporting requirement, as adopted in other states, would be a less intrusive means to accomplish the legitimate goal of safe roadways, Plaintiff does not specify how this optional reporting would increase road safety. Such a permissive reporting standard would place the burden of evaluating driving abilities on the physician such as Plaintiff, who has asserted that health care professionals are not assessors of driving skills. Moreover, an optional reporting standard would undoubtedly result in different assessments of similar impairments

and produce less uniform outcomes throughout the Commonwealth.

Further, acknowledging that PennDOT recalled 22% of the licenses of those individuals reported under the regulation does not necessarily lead to a conclusion that the other 78% of cases impermissibly infringed on the patients' right to privacy. It may, rather, suggest that the license recall is not automatic upon a report, that reporting creates a presumption, but not a conclusion, of unfitness and/or that PennDOT engages in a review process to ensure only those truly unfit drivers are disqualified from driving.

Furthermore, the regulation is narrowly tailored to serve a compelling state interest. *See A.A. ex rel M.M. v. New Jersey,* 341 F.3d 206, (3d Cir.2003) (rejecting right to privacy claim because the compelling interest of the prevention of sex offenses outweighed the sex offender's right to privacy); *Paul P. v. Farmer,* 227 F.3d 98, 107 (3d Cir.2000) (same). If PennDOT instead required all drivers to submit to periodic examinations to test their competency to operate a vehicle, such a requirement would not be sufficiently narrow to achieve its interest in promoting safe driving. *See Witthoeft v. Kiskaddon,* 557 Pa. 340, 733 A.2d 623, 627 (Pa.1999). In other words, protection of motorist and their passengers on Pennsylvania roadways is a compelling state interest and the reporting requirement of those impaired by certain conditions is narrowly tailored to serve that interest. Therefore, the regulation does not violate the privacy rights of Plaintiff's patients and this claim should be dismissed.

Finally, the court is not persuaded that the statutory psychiatrist-patient privilege [11] outweighs the legitimate state interest served by disclosure. Clearly this privilege is not absolute and does not prevent any and all disclosures of medical information. The statutory privilege addresses the disclosure of medical information via testimony, rather than the type of disclosure sought by the regulation—reports to a state agency. Moreover, "opinions, observations, and diagnosis are not protected by the privilege[.]" *Com. v. Moody,* 843 A.2d 402, 406 (Pa.Super.2004); *Com. v. G.P.,* 765 A.2d 363 (Pa.Super.2000).

In enacting the statutes governing the psychiatrist-patient privilege and the reporting requirement, the court cannot conclude, as Plaintiff infers, that the Pennsylvania General Assembly create an exception for information acquired within the psychiatrist-patient relationship to be exempted from the reporting requirement. Additionally, although deference is due to the opinion of the medical community on medical issues, the issue presently raised in is not solely a medical one. Consequently, the medical profession's approach as to the reporting of impaired or disabled patients, while informative, must be considered along with other important factors including governmental authority and public safety.

11. The applicable statutory provision, governing the confidential communications to psychiatrists or licensed psychologists, provides:
No psychiatrist or person who has been licensed under the act of March 23, 1972 (P.L. 136, No. 52),[FN1] to practice psychology shall be, without the written consent of his client, examined in any civil or criminal matter as to any information acquired in the course of his professional services in behalf of such client. The confidential relations and communications between a psychologist or psychiatrist and his client shall be on the same basis as those provided or prescribed by law between an attorney and client.
42 Pa.C.S.A. § 5944.

### (E) Substantive Due Process

Plaintiff next asserts that the PennDOT regulation violates his substantive due process rights by interfering with his ability to practice his profession. The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 2. The substantive component bars states from infringing upon fundamental rights that are deeply rooted in history and tradition unless the infringement is narrowly tailored to serve a compelling state interest. *Washington v. Glucksberg,* 521 U.S. 702, 721, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997). When fundamental rights are not implicated or infringed, state statutes are reviewed under a rational basis test and upheld if it bears some rational relation to some legitimate end. *Lawrence v. Texas,* 539 U.S. 558, 588, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003); *Vacco v. Quill,* 521 U.S. 793, 799, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997); *Nicholas v. Penn. State University,* 227 F.3d 133, 139 (3d Cir.2000); *Heffner v. Murphy,* 590 F.Supp.2d 710, 723 (M.D.Pa.2008). When applying a rational basis test to a statute, there is a presumption that the statute is valid. *Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

The right to practice one's profession, the right Plaintiff suggests is compromised by the regulation, is not a "fundamental right." *Heffner, supra; Meier v. Anderson,* 692 F.Supp. 546, 550 (E.D.Pa. 1988). Under the "rational basis standard," as long as the regulation is rationally related to a legitimate government interest, substantive due process rights have not been violated. *Lawrence, supra* at 578, 123 S.Ct. 2472; *Heffner, supra.* The regulation need not be narrowly tailored to the legitimate end sought by the government. *Koorn v. Lacey Twp.,* 78 Fed.Appx. 199, 202 (3d Cir.2003). A minimum rationality standard is an extremely difficult standard for a plaintiff to meet. *Knight v. Tape, Inc.,* 935 F.2d 617, 627 (3d Cir.1991).

Plaintiff classifies the impact of the regulation as impairing his ability to effectively treat his patients given that the regulation may obligate him to breach the confidentiality essential to the physician-patient relationship. Assuming, as Plaintiff asserts, the harmful effect the regulation has on the physician-patient relationship, it's purpose—promoting the safe operation of vehicles by competent drivers on Pennsylvania's roadways—has been found to be rationally related to a legitimate state interest. *See Sharon v. Larson,* 650 F.Supp. 1396, 1404 (E.D.Pa. 1986); *McKay v. Com.,* 52 Pa.Cmwlth. 24, 415 A.2d 910, 915 (Pa.Commw.1980).

As Defendants assert, any effect the regulation has in Plaintiff's practice is an unintended, indirect and incidental consequence of the regulation not actionable as a substantive due process claim under the Fourteenth Amendment. Consequently, Plaintiff's substantive due process claim is without merit and should be dismissed.

### (F) First Amendment

The First Amendment to the U.S. Constitution proscribes federal action "respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, ... or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." Defendants contend that Plaintiff has failed to state a claim of freedom of association under the First and Fourteenth Amendment, asserting that there is no such constitutional protection afforded the psychiatrist-patient relationship and, moreover, that the PennDOT regulation does not interfere with that association. Plaintiff, in turn, argues that the regulation compels health care providers such as himself to breech the

physician-patient confidentiality, an element crucial for effective treatment.

"Freedom of association is a constitutional right guaranteed under the first amendment as a fundamental element of personal liberty." *Ziegler v. County of Bucks,* Civ. A. No. 98–4561, 1992 WL 129643, *6 (E.D.Pa. June 8, 1992). The Constitution guarantees, and our courts have recognized, a right to associate for the purpose of engaging in those activities protected by the First Amendment, such as, speech, assembly, petition for the redress of grievances, and the exercise of religion. *Id.* (citing *Roberts v. United States Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)). Plaintiff, maintains that a physician-patient relationship has protection under the First Amendment and state action may be enjoined where it places barriers to the full disclosure of all facts needed between these two parties. *See Conant v. Walters,* 309 F.3d 629 (9th Cir.2002), *cert. denied, Walters v. Conant,* 540 U.S. 946, 124 S.Ct. 387, 157 L.Ed.2d 276 (2003) (state regulation that threatened to punish physicians who spoke to their patients about the use of medical marijuana struck at core of First Amendment because recommendation itself did not constitute illegal conduct).

As Defendants observe, there are two types of associations protected by the Constitution: expressive and intimate. In *Roberts v. United States Jaycees,* 468 U.S. 609, 618, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984), the Supreme Court identified a distinction between's one's freedom of "intimate association" and his or her freedom of "expressive association." The first type of association protects the rights of individuals to associate for purposes of engaging in activities protected by the First Amendment, such as "[a]n individual's freedom to speak, to worship, and to petition the government for the redress of

grievances...." *Roberts,* 468 U.S. at 622, 104 S.Ct. 3244 (citations omitted) ("According protection to collective effort on behalf of shared goals is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority"). The second type protects certain close and intimate human relationships, such as family relationships. *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh,* 229 F.3d 435, 441–42 (3d Cir.2000).

Both freedoms are firmly embedded within the Supreme Court's jurisprudence. However, only the freedom of expressive association is based upon the First Amendment. The freedom of intimate association, which is based on the Due Process Clause of the Fourteenth Amendment, is properly characterized as a substantive due process right and recognizes the right of an individual to develop deeply personal attachments with other individuals. *Id.* at 620. Because the right of expressive association, unlike the distinct right of intimate association, is grounded in the First Amendment, the court understands Plaintiff's present claims to be grounded within the context of expressive association.

In *Boy Scouts of America v. Dale,* 530 U.S. 640, 120 S.Ct. 2446, 147 L.Ed.2d 554 (2000), the Supreme Court used a three step process to analyze expressive association claims. *Pi Lambda, supra* at 442. A court must first determine whether the group or, here, the physician-patient affiliation, has engaged in expressive association. If expressive association is found, the court must determine whether the state action at issue significantly affected the group's ability to advocate its viewpoints. *See Dale,* at 2452. Finally, state's interest implicated in its action must be weighed against the burden imposed on the associational expression to determine if

the state interest justified the burden. *See id.* at 2456.

The initial question, therefore, is whether the physician-patient relationship, in general terms, constitutes an expressive association between the provider and those he treats. There is no requirement that an organization be primarily political (or even primarily expressive) in order to receive constitutional protection for expressive associational activity. The Supreme Court has made it clear, however, that there is a *de minimis* threshold for expressive activity claims. In *City of Dallas v. Stanglin*, 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989), the plaintiffs claimed that they had an expressive associational interest in mingling at a dance hall. The Supreme Curt concluded that, although the patrons were associating with one another, they were not engaging in First Amendment-protected expression while doing so. "There is no suggestion that these patrons 'take positions on public questions' or perform any of the other similar activities" such as engaging in "a variety of commendable service activities" and "humanitarian service [and] high ethical standards in all vocations." *Pi Lambda, supra* at 444 (citing *id.*) (in turn, quoting *Board of Directors of Rotary International v. Rotary Club of Duarte*, 481 U.S. 537, 548, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987)). Consequently, protected expression does not include *any* possible expression. *See Stanglin, supra* ("It is possible to find some kernel of expression in almost every activity a person undertakes-for example, walking down the street or meeting one's friends at a shopping mall-but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.").

Furthermore, the freedom of association doctrine is inapplicable to a physician-patient relationship. *Conant v. McCaffrey*, No. 97–0139, 1998 WL 164946, \*3

(N.D.Cal. March 16, 1998). Plaintiff contends that the case relied upon by Defendants pre-dates the medical marijuana case of *Conant v. Walters*, which, as noted above, determined the state regulation prohibiting physicians from discussing the medicinal use of marijuana with their patients was properly enjoined as violative of the First Amendment. However, in recognizing the First Amendment protection afforded to such situations, *Conant v. Walters* addressed an issue of free speech, not free association. Consequently, it is distinguishable from the holding of *Conant v. McCaffrey* and the instant case. Additionally, the *Conant v. McCaffrey* holding is persuasive, noting that "[t]he freedom of association privilege grows out of *NAACP v. Alabama*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), a case that prohibited disclosure of NAACP membership lists. The Supreme Court grounded its decision on the importance of 'group association . . . for the advancement of beliefs and ideas.'" *Id.* at \*3 (quoting *NAACP* at 460, 78 S.Ct. 1163). The decision further observed:

> Moreover, the freedom of association cases "protect 'freedom of association for the purpose of advancing ideas and airing grievances.'" In this case, the patients and doctors are not meeting in order to advance particular beliefs or points of view; they are seeking and dispensing medical treatment. The fact that their treatment discussions may involve the politically-charged topic of medical marijuana does not transform their relationship into the kind of advocacy association described in NAACP. For these reasons, the Court does not believe that the NAACP doctrine applies to the relationships or communications at issue.

*Id.* (citations omitted).

The court concludes that this reasoning is persuasive and that, despite the need for

full disclosure and confidentiality in communications between a patient and his physician, a free association claim warranting constitutional protection does not lie therein. The physician-patient association fails to share sufficiently similar characteristics with those groups to whom First Amendment protection to freely associate has been afforded. Consequently, it is recommended that Count III be dismissed.

### (G) ADA and Rehabilitation Act

Plaintiff also brings claims under Titles II of the ADA and Section 504 of the Rehabilitation Act of 1973. It is worth recognizing that the ADA and the Rehabilitation Act are generally interpreted consistently. *Emerson v. Thiel College,* 296 F.3d 184, 189 (3d Cir.2002).

Title II of the ADA is intended to prohibit discrimination by governmental entities in their operation of public services, programs and activities. The relevant statutory provision provides:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. For purposes of this section, "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government[.]" 42 U.S.C.A. § 12131(1). "In order to establish a prima facie case of discrimination under the ADA, a plaintiff must prove (1) that he is disabled, (2) that he is a qualified individual with a disability, and (3) that he has suffered an adverse action because of that disability." *Derrick F. v. Red Lion Area School Dist.,* 586 F.Supp.2d 282, 299 (M.D.Pa.2008); *Turner v. Hershey Chocolate U.S.,* 440 F.3d 604, 611 (3d Cir.2006) (citations omitted).

The Rehabilitation Act provides, in pertinent part: "No otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance ..." 29 U.S.C. § 794(a). Section 504 gives rise to an implied private right of action in favor of persons who allege to have been subjected to illegal discrimination based on handicap. *Strathie v. Department of Transportation,* 716 F.2d 227, 229 (3d Cir.1983). Under § 504, a plaintiff must show that: 1) he or she is a "handicapped individual," 2) he or she is "otherwise qualified" for participation in the program, 3) the program receives "federal financial assistance," and 4) he or she was "denied the benefits of" or "subject to discrimination" under the program. *Nathanson v. Medical College of Pennsylvania,* 926 F.2d 1368, 1380 (3d Cir.1991) (quoting *Strathie, supra* at 230).

The question presented instantly is whether Plaintiff's treatment of his patients is included within the meaning of services, programs or activities under these Acts. Plaintiff asserts that PennDOT, as a public entity, engages in direct discrimination by encroaching into the constitutionally-protected right to privacy, *to wit,* the confidential trust in the psychiatrist-patient relationship, through the regulation's reporting requirement. As a result, Plaintiff argues, his patients are less likely to be candid with him in their treatment. Defendants contend, however, that both provisions of the statutes Plaintiff seeks to invoke "prohibit public entities from excluding disabled individuals from participation in or benefitting from governmental services, programs or activities." (Doc. 21, p. 30–31). To state a cause of action, they submit, such discrimination must be in a service, program or activity of

PennDOT itself, not the denial of access to Plaintiff's medical services. Inasmuch as Plaintiff challenges his patients right to access his services, there is no state service, program or activity at issue in the present action to trigger the application of either Title II or § 504.

There is a split of authority as to whether the second clause of § 12132 of Title II prohibits discrimination only in a public entity's services, programs or activities, as Defendants maintain, or whether this language is a catch-all phrase that prohibits all discrimination by a public entity and thus does not limit coverage to conduct that occurs within the services, programs or activities of a public entity, as Plaintiff argues. Courts within this district have interpreted this language to limit its application. "Although the second clause of § 12132 appears to be all-encompassing, it is limited by Title II's definition of 'qualified individual with a disability.'" *Pennsylvania State Troopers Ass'n v. Pennsylvania*, No. 1:06–CV–1079, 2007 WL 853958, *6 (M.D.Pa. March 20, 2007). Moreover:

> A plaintiff is not "qualified" to bring any Title II claim unless he or she "meets the essential eligibility requirements" of a government service, program, or activity provided by a public entity. The second clause of § 12132 therefore must relate to a government service, program, or activity; otherwise a plaintiff is not "qualified" to bring a claim under that clause.

*McSherry v. Department of Labor & Industry*, Civ. No. 1–04–CV–132, 2006 WL 463157, *10 (M.D.Pa. Feb. 23, 2006) (citing *Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1175–76 (9th Cir.1999)). In the complaint, Plaintiff does not allege that the Defendants discriminate against him, or his patients, with respect to a service, program or activity the Commonwealth provides or that there are "public ser-vice[s] available to the non-disabled that [D]efendants are denying [his patients] because of their disability." *Cornell Companies, Inc. v. Borough of New Morgan*, 512 F.Supp.2d 238, 264–65 (E.D.Pa.2007) (finding that Plaintiff failed to allege that the defendants discriminated against it and its students with respect to specific services, programs, or activities provided by the Borough defendants). Plaintiff instead alleges that an incidental effect of the regulation is the infringement on the right to privacy through the compromised communication between him and his patients. The professional care he provides his patients is not a "governmental service, program or activity" so as to trigger the operation of Title II. *See Zimmerman, supra.* Consequently, having failed to establish a "service, program or activity" of PennDOT that discriminates in its benefits to his patients, Plaintiff has not established a prima facie case of discrimination under Title II.

With respect to the Rehabilitation Act claim, although § 504 was initially adopted to give handicapped individuals equal access to employment opportunities and educational programs, it has been applied in the medical context to ensure that individuals are not denied treatment or discriminated against by federally-supported entities because of a disability. *Woolfolk v. Duncan*, 872 F.Supp. 1381, 1388 (E.D.Pa.1995). For § 504 purposes, a "program or activity" that receives federal funds is defined as:

> all of the operations of ... an entire corporation, partnership, or other private organization, or an entire sole proprietorship ... which is principally engaged in the business of providing ... health care ... any part of which is extended Federal financial assistance.

29 U.S.C. § 794(b). "Receipt of federal funding in the form of Medicare or Medic-

aid payments for the care rendered to any patient brings the treating physician, hospital or medical center within the scope of the Act." *Sharrow v. Bailey,* 910 F.Supp. 187, 193 (M.D.Pa.1995). As applied to the receipt of medical context, section 504 has been interpreted to prevent discrimination in the receipt of medical treatment.

However, Plaintiff does not allege he himself violates § 504 through discrimination against his patients but rather he accuses PennDOT of discrimination through its regulation. Having determined that PennDOT has the authority to set standards governing the safe operation of motor vehicles since it is rationally related to a legitimate state interest, the regulation does not run afoul of § 504 of the Rehabilitation Act. Given the related purposes of § 504 and the ADA and the fact, as noted above, that they are regularly interpreted and applied consistently, the court concludes that Plaintiff cannot establish that his patients were denied benefits or subject to discrimination "under the program" inasmuch as he does not allege discrimination on his part through his practice against his patients.

With respect to the license recall procedure, Plaintiff contends that PennDOT discriminates against his patients based on their disability by summarily recalling, without investigation, their driver's licenses based on the unsubstantiated report(s) of a physician. *See* 75 Pa.C.S.A. § 1519(c). Defendants maintain that the recall procedure is not discriminatory in that it affords all individuals, the disabled and non-disabled alike, the same due process. They observe, further, that a driver may challenge a recall by appealing the matter to state court, where PennDOT bears the burden of demonstrating an incompetency to drive, which can be rebutted. 75 Pa. C.S.A. § 1519(c). Moreover, the due process challenge to this statute has been rejected by Pennsylvania courts, which have held that recalled drivers are not

"qualified individuals" because they fail to meet the minimum standards to safely operate a car. Additionally, Plaintiff has not identified how non-disabled but unfit drivers would fare better under the recall provision than his disabled patients. In fact, the recall statute does not differentiate with regard to disability but rather with respect to competency to safely operate a motor vehicle, though it may thereby affect some disabled drivers. Given PennDOT's statutory authority to determine a licensee's competency to operate a vehicle, and based on its legitimate state interest in maintaining safe roadways, such distinction amongst drivers cannot be said to be discriminatory.

Therefore, judgment should be entered for Defendants on Plaintiff's ADA and Rehabilitation Act claims.

## V. Recommendation

Based on the foregoing, it is respectfully recommended that:

1. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED to the extent the Complaint attempts to state a cause of action pursuant to 42 U.S.C. §§ 1983 and 1988;

2. The Motion for Judgment on the Pleadings (Doc. 18) be DENIED as to Count I (Supremacy Clause), to the extent PennDOT's regulations seek disclosure of the medical record of any individual participating in a federally assisted alcohol or drug treatment program, and GRANTED in all other respects;

3. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED as to Count II (vagueness claim under the Fifth and Fourteenth Amendments);

4. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED as to Count III (substantive due process

claim arising under the Fifth and Fourteenth Amendments);

5. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED as to Count IV (freedom of association claim arising under the First and Fourteenth Amendments);

6. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED as to Count V (right to privacy claim under the Ninth and Fourteenth Amendments);

7. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED as to Count VI (claims of violations of the ADA);

8. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED as to Count VII (claims of violations of Section 504 of the Rehabilitation Act);

9. The Motion for Judgment on the Pleadings (Doc. 18) be GRANTED and Plaintiff's request for attorneys fees BE DENIED pursuant to 42 U.S.C. § 1988 in association with this action.[12]

12. It does not appear that attorneys' fees are recoverable under § 1988 inasmuch as that statutory provision limits such an award to claims not presented herein. The relevant statutory provision provides:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318 [20 U.S.C.A. § 1681 et seq.], the Religious Freedom Restoration Act of 1993 [42 U.S.C.A. § 2000bb et seq.], the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or section 13981 of this title, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C. § 1988(b).